## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD D. PARKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-043-SLR |
| | ) | |
| SARGEANT DUKES and | ) | |
| G.R. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Donald D. Parkell, Wilmington Delaware. Pro se.

Devera B. Scott, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Dukes and Johnson.

## MEMORANDUM OPINION

Dated: July �More , 2013
Wilmington, Delaware

ROBINSON, Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff") is a Delaware prison inmate currently incarcerated at the Howard R. Young Correctional Center in Wilmington, Delaware. On January 17, 2012, plaintiff filed a complaint and motion to proceed in forma pauperis pursuant to 42 U.S.C. § 1983 against Sergeant Dukes ("Dukes") and Warden Johnson ("Johnson"), (collectively "defendants") alleging Eighth Amendment violations. (D.I. 1,3) The court has subject matter jurisdiction over the claims asserted pursuant to 42 U.S.C. §1983 and 28 U.S.C. § 1331. Currently before the court is plaintiff's motion to compel (D.I. 22), and defendants' motion for summary judgment. (D.I. 26)

## II. BACKGROUND

In March 2011, plaintiff underwent surgery on his right shoulder while incarcerated at the correctional facility in Smyrna. (D.I. 19 at A000083) After the surgery, he was issued a bottom bunk memo, which expired on July 23, 2011. (D.I. 19 at A000034) On June 27, 2011, plaintiff was transferred to Sussex Correctional Institution ("SCI"). (D.I. 28, ex 1, Parkell Dep. 11:5-12, Nov. 19, 2012) While at SCI, plaintiff had several bunk assignments. (Parkell Dep. 30:5-19) Plaintiff was first placed in a single cell room while in the Multi-Security Building, a top bunk in tier D (October 12, 2011-October 23, 2011), a bottom bunk in tier B (October 23, 2011-November 11, 2011), and finally a top bunk in tier A (starting November 11, 2011), where the incident at hand occurred. (Parkell Dep. 30:3-24; 31:1; D.I. 27, ex. 2, Dukes aff. ¶¶ 2-4 & ex. A)

Plaintiff alleges that, when he was moved from a bottom bunk in tier B to a top bunk in tier A, it was an attempt by Dukes to harass or punish him. (D.I. 3 at 3-4) Duke disputes this. (Dukes aff. at ¶ 18) On November 14, 2011, plaintiff was injured when he

fell attempting to reach the top bunk. (D.I. 19 at 00060) A bottom bunk memo, dated November 16, 2011, was sent out by the medical staff and received by the security superintendent on November 18, 2011. (D.I. 19 at A000142) Plaintiff alleges that Dukes was made aware of the need, but ignored it. (D.I. 3 at 4) Dukes disputes this. (Dukes aff. at ¶¶ 14-17) On November 24, 2011, plaintiff again fell attempting to reach his bed. (D.I. 19 at A000058) After visiting the nurse, the bottom bunk memo was sent out again on November 26, 2011, and approved on November 28, 2011. (D.I. 19 at A000143) Plaintiff alleges that after his second fall, Dukes was informally reprimanded. (D.I. 3 at 4) Dukes disputes this. (Dukes aff. at ¶ 5)

After learning of the memo on November 26, 2011, Dukes ordered plaintiff and his cell mate, Guinn, to switch bunks so that plaintiff could have a bottom bunk. (D.I. 3 at 4-5; Dukes aff. at ¶ 17) At 2:30 P.M., the inmates were counted. (Dukes aff., ex. B at A000168) During the count, plaintiff was in the bottom bunk and his cell mate was in the top. (Parkell Dep. 65:13-14; Dukes aff. at ¶ 9) At 3:30 P.M., Dukes went off duty. (Dukes aff., ex. B at A000169) At 3:50 P.M. there was another count of the inmates and still no problems were reported. (Id.) At 5:30 P.M., a fight broke out between plaintiff and his cell mate Guinn. (Id.) Officers responded and cap stunned both men. (Id.) Plaintiff was then sent to ASDA (holding area for pre-hearing detention), where he alleges a policy was put in place by Johnson that did not allow inmates in ASDA to shower for 24 hours, making it impossible for plaintiff to wash the mace from his face and body. (D.I. 3 at 10) Johnson disputes that such a policy was in place. (D.I. 27, ex. 3, Johnson aff. at ¶ 6) When plaintiff was taken to the infirmary, the medical staff noted

2

that the plaintiff was not in any distress and plaintiff testified that he rinsed his eyes out. (D.I. 19 at A000078; D.I. 30, ex 1)  Plaintiff claims that he filed grievances, but they were either deemed nongrievable by Dukes himself or they were intercepted.  (D.I. 3 at 4, 6-7)  Dukes and Johnson dispute this claim.  (Dukes aff. at ¶ 11; Johnson aff. at ¶ 7)

## III. MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivilged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In his requests for production, plaintiff seeks a full and complete copy of his prison medical record, including photographs taken of his injuries and copies of the disciplinary report relating to the incident with Guinn.  (D.I. 16)  In response to plaintiff's request for production of documents, defendants produced plaintiff's medical records for the time period relevant to the complaint and the disposition of plaintiff's disciplinary hearing.  (D.I. 19; D.I. 24)  Plaintiff seeks copies of photos of inmate Guinn's injuries, copies of the disciplinary outcomes of the hearing relating to the incident with Guinn, as well as any and all investigative reports and/or findings related to the investigation into the incident.  (D.I. 16)  Defendants objected to producing these records on the grounds

3

that they are privileged DOC records pursuant to 11 Del. C. § 4322 and 29 Del. C. §

10002, which statutes specifically protect prison records from disclosure to an inmate.

(D.I. 18) For example, § 10002 provides that "[a]ny records in the possession of the

Department of Correction where disclosure is sought by an inmate in the Department's

custody" are not public documents. (D.I. 25 at 2)

The court has reviewed plaintiff's production requests and defendants' responses

thereto.[1] Defendants have properly raised privilege objections to some of plaintiff's

discovery requests, and also produced responsive discovery. After reviewing the

record, the court concludes that defendants have produced sufficient records for the

court to evaluate the allegations at bar. Therefore, the court will deny the motion to

compel.

## IV. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears

the burden of proving that no genuine issue of material fact exists. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that

could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from

which a rational person could conclude that the position of the person with the burden of

---

[1]The court agrees that documents concerning Guinn's injuries or hearing are not relevant because it is not disputed that there was an altercation with the plaintiff and that they both received medical attention.

4

proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V. DISCUSSION

### A. Eighth Amendment Violations

Deliberate indifference is a state of mind "more blameworthy than negligence[,]" and reflecting greater than an "ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1970) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is determined through a subjective test - that is, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

5

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, the simple presence of a risk is insufficient to establish deliberate indifference where the official did not actually perceive the risk. *Id.* at 838, 847.

The record does not demonstrate that Dukes knew of a substantial risk of serious harm to the plaintiff. Plaintiff filed two sick call slips between October 12 and October 23, 2011, while he was assigned to a top bunk, and he did not request a bottom bunk memo on either occasion. (D.I. 19 at A000062-A000063) Therefore, there is no indication of record that Dukes had reason to think plaintiff needed one. Moreover, plaintiff has produced no evidence to demonstrate that, when he was moved on November 11, 2011 to a top bunk in tier A, it was an attempt by Dukes to harass or punish him.

There also is no evidence showing that Dukes was not responsive to the bottom bunk memos. Even assuming that Dukes received the first such memo, Dukes timely ordered plaintiff and his cell mate to switch bunks upon receipt of the second memo. The inmates were counted twice after Dukes gave the order to switch. (Dukes aff., ex. B at A000168-A000169) For the first count, plaintiff and his cell mate Guinn had switched bunks. (Parkell Dep. 65:4-15) There were no problems reported during the second count, which was twenty minutes after Dukes went off shift. (Dukes aff., ex. B at A000169) The record shows that the fight between plaintiff and Guinn occurred at 5:30 P.M., two hours after Dukes' shift had ended and another guard was on duty.[2] (*Id.*)

---

[2] Plaintiff alleges in his opposition brief that prison officials may be held liable for inmate violence if they permit it and that the housing conditions posed an excessive risk. (D.I. 28 at 25-26) As there is no evidence to support these allegations, the court

## B. Eleventh Amendment Immunity

The claims against State defendants in their official capacities are barred by the

Eleventh Amendment. *See Callahan v. City of Philadelphia,* 207 F.3d 668 (3d Cir.

2000). The State has not waived its immunity from suit in federal court; although

Congress can abrogate a state's sovereign immunity, it did not do so through the

enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware,* 213 Fed. Appx. 92, 94

(3d Cir. 2007) (citations omitted).  Moreover, the claims against State defendants

cannot be maintained because State defendants, in their official capacities, are not

"persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State*

*Police,* 491 U.S. 58, 71, (1989) (neither states nor state officials sued in their official

capacities for money damages are "persons" within the meaning of § 1983); *see*

*Evancho v. Fisher,* 423 F.3d 347, 350 (3d. Cir. 2005).  Therefore, the court will grant

defendants' motion for summary judgment on the claims raised against them in their

official capacities.[3]

## C. Respondeat Superior/Personal Involvement

Johnson contends that the claims against him fail because he was not personally

involved in the alleged wrongs and liability cannot be based upon respondeat superior.

In order to prevail under § 1983, a plaintiff must establish that each defendant had

personal involvement in the alleged wrongs since liability cannot be predicated solely on

does not address them.

   [3] An exception to the Eleventh Amendment immunity allows for injunctive relief
against State officials for ongoing violations of federal law. The court finds no ongoing
violations and, therefore, injunctive relief is not appropriate.

7

the operation of respondeat superior. *Rizzo v. Goode,* 423 U.S. 362, 369 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rizzo*, 423 U.S. at 377; *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d. Cir. 1990). Personal involvement may be shown by either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Rode*, 845 F.2d at 1207. Plaintiff must show: "1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." *Hunter v. Schouppe*, Civ. No. 06-1291, 2007 WL4554251 (W.D. Pa. 2007) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

It is apparent from plaintiff's testimony that Johnson had no personal involvement in plaintiff's alleged constitutional deprivations and is named as a defendant solely based upon his supervisory position. Plaintiff testified that he did not have any knowledge that Johnson was notified about the fight, the bottom bunk memo, or the grievances. (Parkell Dep. 84:14-24, 85:1-5) The record does not indicate that Johnson was in any way personally involved with any of the plaintiff's complaints or that he was aware of any unreasonable risk of injury to the plaintiff to which he remained "deliberately indifferent." There is no evidence in the record supporting plaintiff's claim that Johnson had a "no showering" policy for inmates in the ASDA holding area.

8

Johnson also testified in his affidavit that no such policy was in place. (Johnson aff. at ¶ 6) The record does not support plaintiff's claims that Johnson had a policy for or allowed grievance complaints to be thrown away. Johnson testified that the grievances are stored in locked boxes and someone with Dukes' rank of sergeant would not have had access to the box. (Johnson aff. at ¶ 7) There is also a copy of the grievance filed against Dukes by plaintiff in the record, an indication that the complaints were not thrown away or disposed of. (Dukes aff., ex. C) The grievance form is the only document that suggests the warden was notified of the grievance against Dukes.[4] (*Id.*) Grievances, however, are not enough to impute knowledge to State defendants. *See Rode*, 845 F.2d at 1208 (if the filing of a grievance were enough to put a defendant on notice for personal liability, it would allow for personal liability in almost every case); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *cf. Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *affd.*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

## D. Retaliation

Although not specifically pled, plaintiff's complaint alleges "a pattern of

---

[4] On the grievance, the box is checked next to "warden notified." (Dukes aff., ex. C) Plaintiff alleges that the form is forged as his housing location is incorrect. However, the computer system inputs plaintiff's current housing location when the grievance is generated, negating this allegation. (D.I. 30, ex. 2)

harassment" and "retaliatory efforts" by Dukes. (D.I. 3 at 3-4) "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford–El v. Britton*, 523 U.S. 574, 592, (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981). Proof of a retaliation claim requires that plaintiff demonstrate: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

There is no evidence to support plaintiff's allegations that his bunk moves were anything but ordinary. Plaintiff's grievances were also not disposed of as he alleges. (Dukes aff., ex. C) The record does not support a finding that Dukes' behavior was retaliatory or harassing.

## VI. CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary

10

judgment[5] (D.I. 27), and denies plaintiff's motion to compel.  (D.I. 22)  An appropriate order shall issue.

_____

[5] The court will not address the issue of qualified immunity for defendants inasmuch as there has been no violation of plaintiff's constitutional rights.

11